[No. 6080.]

## Cary v. Mine and Smelter Supply Co.

Injunction—*Ex Parte*—*Summary Judgment on Bond*—The provisions of the code (Rev. Code sec. 164) that one allowed an injunction ex parte shall give bond to the defendant, with sureties, conditioned for the payment of a sum, fixed by the court, in case it shall be determined that no emergency existed, etc., or that plaintiff created or connived at such emergency, for the provision requiring for the entry of summary judgment, pursuant to the terms of the bond, in case it shall be determined that no emergency existed, etc., is not in violation of any provision of the federal or state constitution.

*Error to Denver District Court.*—Hon. Booth M. Malone, Judge.

Mr. T. J. O'Donnell, Mr. John W. Graham, Jr., Mr. Canton O'Donnell and Mr. Edward H. Park, for plaintiff in error.

Mr. Gerald Hughes and Mr. Barnwell S. Stuart, for defendant in error.

Mr. Justice White delivered the opinion of the court:

The Mine and Smelter Supply Company, a corporation, instituted a suit in the district court within and for the city and county of Denver, against John Cary, whereby it claimed that certain shares of the capital stock of another corporation held by and in the name of Cary, in truth and in fact, belonged to, and was the property of the plaintiff, and therein sought to have it so decreed, and to have defendant transfer the stock to it, and account for certain dividends received by him upon such stock. At the same time it made application, in conformity with section 164 of the Code of Civil Procedure, R. S., 1908, for, and secured, a temporary injunction, without notice, restraining the defendant from transferring, selling or incumbering the stock. The plaintiff executed and filed two bonds or undertakings, with sureties, as required by the Code of Civil Procedure, R. S., 1908, secs. 163, 164. The one re-

quired by section 164, commonly known as the additional or emergency bond, was in the sum of $500, "conditioned for the payment of the sum therein mentioned to the defendant if it shall be adjudged that such emergency did not exist, or that the plaintiff created, or connived at its creation, by neglect or otherwise."

Upon hearing the matter the court held that the emergency alleged, upon which the temporary restraining order was issued, without notice, did not exist, dissolved such order, and denied the relief prayed in that respect. Thereupon the defendant interposed a motion to dismiss the complaint, and enter judgment on the emergency bond in his favor and against the plaintiff and his sureties therein, and to issue execution therefor as provided by section 164, *supra*. The motion was denied, but the court subsequenty, upon request of plaintiff, dismissed the complaint, and the defendant, as plaintiff in error, brings the cause here for review.

The action of the trial court was based upon the assumption that the code provision requiring the court, when it finds that the emergency alleged for the purpose of securing the restraining order, without notice, did not exist, or if existing was brought about by the act or omission of, or for the plaintiff, or by his knowledge, to thereupon "dismiss the complaint without respect to the merits thereof," and to "summarily enter judgment on said emergency bond for the defendant and against the plaintiff and his sureties" for the amount designated therein, and to "issue execution therefor," violates fundamental principles of the state and likewise the federal constitution.

The particular constitutional provisions said to be involved are the following: Secs. 3, 6, 14 and 25 of article II; sec. 25 of article VI, constitution of Colorado, and sec. 1 of the fourteenth amendment of the constitution of the United States.

The necessity of determining the constitutionality of the clause requiring the dismissal of the complaint without respect

to the merits thereof, was eliminated by the dismissal of the complaint upon the request of the plaintiff, and we shall express no opinion thereon... Were we to assume that clause of the legislative act to be unconstitutional, and strike it out, that which remains is complete in itself and capable of being executed in accordance with the apparent legislative intent. So the sole question for consideration and determination is the validity of that portion of the section requiring the court, upon certain conditions stated, to enter judgment for the defendant against the plaintiff and his sureties in the emergency bond, and to issue execution therefor.

While the constitution, except as therein otherwise provided, vests the judicial power of the state, as to matters of equity, in certain designated tribunals, and such other courts, as may be prescribed by law, it, in no wise, inhibits legislation prescribing the procedure by which the jurisdiction is to to be exercised, unless the regulations adopted, substantially impair the constitutional power of the court, or practically defeats its exercise.—Pomeroy's Equity Jurisprudence, Chap. III; *Ex Parte Harker,* 49 Calif. 465; 11 Cyc. 739.

Indeed, the right in that respect has been exercised by the general assembly since the organization of the state, and particularly as to injunctive procedure and relief.—Code 1877, secs. 125, 126 and 127; Sess. Laws, 1887, secs. 146, 147 and 148; Sess. Laws, 1903, sec. 148.

Such also has been the practice of the legislative bodies of other states. In *Russel v. Farley,* 105 U. S. 433, it is said that;

"As early as 1723 a law was passed in Maryland, that any person desiring to proceed in equity against a verdict or judgment rendered against him in the county court, should be required to give security in double the amount of the debt for the due prosecution of the injunction and payment of debt and all costs and damages that should accrue in the chancery court, or should be occasioned by the delay, unless the court of chancery should decree to the contrary, and in all things obey

such order and decree as the court should make.    In 1793 an additional law was passed, to the effect that whenever application should be made for an injunction to stay proceedings at law, the chancellor should have power and discretion to require the applicant to give a bond to the plaintiff at law, with condition to perform such order or decree as the chancellor should finally pass in the cause.

Similar laws were passed in Virginia in 1787, and in New Jersey in 1799, and no doubt in other states at an early date.    Their object was, where an adjudication had already been had at law, to make it compulsory on the chancellor to require security before granting an injunction.    *    *    *

Regulations substantially similar to those above adverted to were prescribed by general rule of the court of chancery of New York prior to the adoption of the Revised Statutes.    In 1828 they were codified, with amendments, in that revision. But the rule, as well as the statute, only related to injunctions for staying proceedings at law.

In 1830, the chancellor of New York, for the first time, made a general rule (No. 31), that where no special provision was made by law as to security, the vice-chancellor, or master, who allowed an injunction out of court, should take from the complainant, or his agent, a bond to the party enjoined, either with or without sureties in the discretion of the officer, in such sum as might be deemed sufficient, not less than $500, conditioned to pay such party all damages he might sustain by reason of such injunction if the court should decide that the complainant was not entitled to the same; and that the damages might be ascertained by a reference or otherwise, as the court should direct.    1 Hoffman Ch. Pr. 80; 1 Barb. Ch. Pr. 622; 2 Paige (N. Y.) 122.

This rule, enlarged and made applicable to all courts and judges, was copied in the New York Code of Procedure of 1848, sec. 195 (now sec. 222), and has been followed in other codes and systems of practice in other states.    See 2, R. S. Wisconsin 748; also Laws of Illinois, Iowa, Colorado, etc.    It

was substantially adopted in the Chancery Rules of New Jersey in 1853, except that it was left to the discretion of the officer to require a bond or not."

We are very certain that the procedure here in question is valid. It requires the court to do only that which it had inherent power to do and which has been exercised by courts of equity from time immemorial. Such courts, in cases where damage may be occasioned to the defendant in the event of an injunction or interim restraining order proving to have been wrongfully granted, have frequently required the plaintiff, as a condition of interference in his favor, to enter into an undertaking to abide by any order the court may make as to damages. Kerr on Injunctions, p. 557.

Without the statutory provisions under consideration, one court may impose terms as a condition precedent to the granting of a writ without notice, while another court might resort to none. Under the statute the terms and conditions imposed must be identical in all cases, except solely the sum of money required by the plaintiff to be paid the defendant, if it subsequently transpires that the plaintiff wrongfully caused the sovereign to interfere with the rights of the defendant without first affording him an opportunity to be heard. The discretion entrusted to the court in this respect, we think wise, and in no sense discriminatory. That which would be reasonable, proper and just to the defendant in one case might not be so in another. In a sense it might be said that the statute is a legislative declaration that in every case where an *ex parte* injunction is issued, the defendant may be damaged, and is, if the necessity for the injunction is not imminent; and as the damage may be uncertain or incapable of being readily ascertained, the plaintiff shall enter into an obligation to pay liquidated damages in the event it shall afterwards appear to the court, upon any hearing or trial of the matter, that the emergency alleged, inducing the court to act without notice to the defendant, did not exist, or existing, was brought about by the act or omission of the plaintiff or by his knowledge.

The requirement that the court summarily enter judgment on the emergency bond for the defendant and against the plaintiff and his sureties, and issue execution therefor, does not, in our opinion, constitute a denial of due process of law.   While it is true that ordinarily in an action of this character, the party aggrieved must resort to an independent action upon the undertaking to recover the damages by him sustained, the rule does not apply where there is a statute authorizing the award in the original cause.—*Sartor v. Strassheim,* 8 Colo. 185, 188.   The statute in question expressly commands that the judgment, for a fixed and known sum, shall be summarily entered in the cause.   The undertaking was executed in pursuance of the statute and for the purpose of obtaining its benefits and necessarily constitutes, in legal effect, a part thereof.—*Shannon v. Dodge,* 18 Colo. 164, 169. The principal and sureties filed the instrument in the cause, and by the terms of the statute consented that the court should enter judgment against them for the amount specified in the bond, if the court adjudged that the emergency alleged· did not exist, or existing, was brought about by the act or omission of or for the plaintiff, or by his knowledge.

All the parties are thus before the court, in the cause, and that which is done is in accordance with the provisions of the statute.   The judgment is, therefore, reversed for further proceedings in accordance with the views herein expressed.

*Judgment Reversed*

Decision *en banc.*